## No. 17,734.

### THE UNITED OIL PRODUCTION CO. *v.* MILLIE QUINN.
(297 P. [2d] 270)

Decided April 30, 1956. Rehearing denied June 4, 1956.

Mr. RICHARD DOWNING, Mr. RICHARD DOWNING, JR., for plaintiff in error.

Messrs. CRANSTON & ARTHUR, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiff in error, a Colorado corporation, as United Oil, and to defendant in error by name.

October 29, 1947, one Coles, who was president of United Oil, contacted Millie Quinn and after some negotiation she agreed to invest $1,250.00 in a planned oil drilling operation to be conducted by the Rangely Drilling Company, a proposed corporation thereafter to be organized. The sum agreed to be invested, which was paid by Quinn, purchased a 1% interest in the business to be conducted by the Rangely Drilling Company. The receipt, signed by Coles, which was delivered at the time of the purchase by Quinn was as follows:

"Received of Mrs. Millie Quinn, whose address is 1246 Pearl St. Denver 2, Colorado, the sum of $625.00 payment in half for a 1% unit of the pre-organization units of the RANGELY DRILLING CO. at 50% of the starting selling price. Balance of $625 payable within 45 days.

"It is understood and agreed that the RANGELY DRILLING CO. is being formed for the purpose of drilling and development of the Deep Weber Sand production on U. S. Government OIL & GAS lease #052605 covering 160 acres in the Rangely, Colorado Field, said lease being operated by the UNITED OIL PRODUCTION Co.

"Dated at Denver, Colorado, this 29th day of Oct. 1947.

(Sgd.) B. E. COLES
Manager
RANGELY DRILLING COMPANY

"It is agreed that one half of said unit, namely ½ of 1%, will be sold by the undersigned Coles for Mrs. Quinn

within 18 months from date for said $1250.00 the full purchase price.

(Sgd.) B. E. COLES"

For reasons which will hereafter appear, the Rangely Drilling Co. was not organized and the proposed "drilling and development of the Deep Weber Sand" was abandoned. United Oil, following abandonment of the original plan to organize the Rangely Drilling Co., drilled a number of shallow wells on the land covered by Quinn's contract with Coles, and substantial oil production resulted therefrom.

Quinn brought this action against United Oil and Coles, seeking judgment against the company for 1% of all oil and gas produced and marketed by United Oil from the land in question, and for 1% of future sales of all oil and gas therefrom. In the alternative, but only in the event that the relief sought against United Oil was denied, plaintiff demanded judgment in the amount of $1,250.00 against defendant Coles.

In their answer, filed by Coles and United Oil, they admitted the payment of $1,250.00 by Quinn to Coles, and alleged in substance that Mrs. Quinn invested her money to defray pre-organization expenses looking toward creation of the Rangely Drilling Company; that the money was expended properly in pre-organization activity; that the venture failed, and that Quinn had nothing coming to her.

The case was tried to the court without a jury, and resulted in a judgment in favor of Quinn against United Oil for 1% of the net profit theretofore received by it and for 1% of the future production to be accounted for at indicated intervals. The action as to defendant Coles was dismissed, and United Oil, seeking reversal of the judgment, brings the case to this Court for review by writ of error.

The trial court upon competent evidence found that prior to and at the time of Quinn's agreement with Coles,

defendant United Oil had an operating agreement with one Charles Hill, lessee of an oil and gas lease covering the property involved; that United Oil had issued all its stock and was without funds for exploration and development of the lease; that Coles, being a promoter, conceived the idea "with the blessing" of his company, of organizing another company to be known as Rangely Drilling Company for the purpose of drilling the lease property on a "farm out" arrangement with United Oil, and to sell units in the "to be organized" corporation, all to the end that United Oil, its stockholders, Coles, and the investors in said units would derive profits from oil and gas production; that Coles set about to organize the new corporation but had no expense money; that he contacted Mrs. Quinn who invested $1250 as above stated; that he contacted other persons and obtained subscriptions from many of them, evidenced by contracts in somewhat different form than that delivered to Quinn; that one Bliss assisted Coles in selling units to these other persons; that four of the five directors of United Oil purchased units; that Coles, as president of United Oil and one of its directors, was given broad powers in representing it, and his authority "for all practical purposes, was unlimited"; that he was given a free hand in his attempt to finance a drilling program on the property involved in this action; that United Oil desired to obtain quick money for drilling an expensive well; that Rangely Drilling Company was to become the instrumentality to be used in financing the well; that the promotion was moving well until the federal Securities and Exchange Commission determined that the property was "off structure" for Weber Sand production and informed Coles that every investor should be specifically informed to this effect; that thereupon the plan to drill a deep well was abandoned as was the plan to organize the Rangely Drilling Company; that investors were offered units of interest in United Oil's operating

contract in lieu of the original plan; that Mrs. Quinn was not consulted or informed of this new arrangement; that other investors agreed to the change and paid the unpaid balances on their respective subscriptions and accepted assignments of interests from United Oil; that thereafter several shallow producing wells were drilled by United Oil; and that Mrs. Quinn, who paid the full subscription price before the abandonment of the original plan, has received nothing.

Defendant Coles claimed that he and Bliss spent most of Mrs. Quinn's investment for living and entertainment expenses while promoting the sale of units of interest in the undertaking to drill for oil on the property. The trial court, in considering this evidence said, "Defendant Coles kept no books or records showing such expenditures other than a check book not produced at the trial, and failed to give an entirely satisfactory account of such moneys."

In substance, the argument of counsel for United Oil in support of their request for reversal of the judgment is: (1) That Mrs. Quinn's money was used for "preorganization expenses" so that her rights ceased when the plans for organization of the Rangely Drilling Company were abandoned; and (2) that the other investors who were solicited by Coles became holders of interests in a different project so that testimony of deals with them was not material, and the success of their project does not give rise to any rights in Mrs. Quinn.

Questions to be Determined.

First: *Under the foregoing facts must we say that Mrs. Quinn has no remedy because the money invested by her was spent for "preorganization expenses" and that abandonment of the plan to organize the Rangely Drilling Company cut off her rights?*

This question is answered in the negative. The frequent references in the brief filed by United Oil to "preorganization expenses" must be considered in the

light of the receipt signed by Coles. The word "pre-organization" appears only one time in this instrument and it is there used to describe the type of unit which Mrs. Quinn was to receive. It seems clear to us that the exact use which was to be made of her money was not covered by the receipt, and that evidence concerning the deals with other investors covering the same general subject was properly received by the court. From the entire record in this case we conclude that her money was to have been used for the same purpose as the original investments of all the others who subscribed for units in the Rangely Drilling Company, and that purpose was to get production of oil and gas from the land upon which United Oil had the exclusive right to proceed under its operating agreement with Hill who held the lease thereon.

Second: *Was the project in which Mrs. Quinn invested her money one which was separate and distinct from that entered into by other investors, by reason of which she suffered the loss of her investment although all other investors enjoyed a profit?*

 This question is answered in the negative. It is strenuously argued by counsel for United Oil that the use of money supplied by Mrs. Quinn, to defray the living expenses of the president of that company in securing other investors in the original project, was proper and within the contemplation of the parties to that contract. If this is true it must necessarily follow that the expenditures of that money were made in the promotion of the identical deal and the identical project for which her money and that of the others was invested. Equity will not permit United Oil to say that Mrs. Quinn's money was properly expended and fully exhausted in securing money from other investors with which to go forward with a project in which she was to have no interest.

 We conclude that, from the beginning, the transactions with other investors which were made by the

president of United Oil for its benefit, and in the promotion of which the money invested by Mrs. Quinn was expended, related to one and the same activity, and all of the investors are entitled to participate in the ultimate profits derived from the project into which the investments ultimately were diverted. The disposition made by the trial court accomplished this equitable result.

The judgment is affirmed.